**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**JAMES GALVAN,**

**Plaintiff,**

**v.**

**DANNY A. MILLER** and **ANDREW S. CAREY,**

**Defendants.**

**Case No. 3:23cv19793-TKW-HTC**

_______________________________________/

# ORDER GRANTING SUMMARY JUDGMENT

This case is before the Court based on Defendants' motion for summary judgment (Doc. 23). Upon due consideration of the motion, Plaintiff's response in opposition (Doc. 27), Defendants' reply (Doc. 29), and the evidence submitted by the parties (attachments to Docs. 22, 24, 26, 28), the Court finds that the motion is due to be granted.

## Facts

On February 28, 2022, at about 11:30 p.m., Santa Rosa County Deputy Sheriff Danny Miller was on patrol when he observed a truck weaving and traveling northbound in the southbound lane on Highway 87. Miller suspected the driver was intoxicated, so he activated his lights and siren.

The truck did not immediately stop, but Miller did not think the truck was trying to flee from him. Rather, he thought that the driver was "too drunk to stop" and "confused on what to do."

When the truck finally stopped, Defendant Miller exited his patrol car and ordered the driver (Plaintiff) to put his hands out of the truck's window.[1] Plaintiff complied.

Miller then ordered Plaintiff to open the truck's door using the outside handle and step out. Plaintiff brought his hands back inside the truck, opened the door using the inside handle, and then stepped out.

Miller told the passenger in the truck to stay where he was and not to move, and he ordered Plaintiff to turn and face away from him and place his hands on the truck. Plaintiff complied.

Miller then ordered Plaintiff to give him his left hand. Plaintiff did not immediately comply. Miller told him again. Plaintiff did not comply, so Miller grabbed Plaintiff's left hand and put it behind his back. As Miller was attempting to handcuff Plaintiff's left hand, Plaintiff cursed at Miller.

After Miller handcuffed Plaintiff's left hand, he grabbed Plaintiff's right hand

---

[1] Miller was wearing a body camera, so the facts related to his interactions with Plaintiff are set forth in the light depicted by body camera video. *See Scott v. Harris*, 550 U.S. 372, 381 (2007); *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300-01 (11th Cir. 2024); *Baker v. City of Madison, Ala.*, 67 F.4th 1268, 1277-78 (11th Cir. 2023).

and put it behind Plaintiff's back. Plaintiff continued to curse at Miller, and he attempted to pull away and turn around to face Miller.

A slight physical struggle ensued and Miller briefly lost control of Plaintiff's right hand. Miller then placed Plaintiff's right arm in a hammerlock[2] as he attempted to regain control of his right hand.

As this was happening, Santa Rosa County Deputy Sheriff Andrew Carey arrived to assist. Carey pressed his chest against Plaintiff to hold him against the truck while Miller continued to order Plaintiff to give him his right hand.

Plaintiff eventually gave Miller his right hand, but as Miller attempted to handcuff that hand, Plaintiff grabbed it with his left hand. Miller ordered Plaintiff to "stop tensing up," and Carey held onto Plaintiff's right hand as Miller attempted to handcuff it. Miller again ordered Plaintiff to "stop tensing up" and told him to let go of his right hand. Plaintiff let go of his right hand and Miller was able to get it handcuffed.

The entire use of force incident—from Miller ordering Plaintiff to give him his left hand to Miller finally getting Plaintiff's right hand handcuffed—lasted approximately 30 seconds, and as soon as Plaintiff was completely handcuffed, Miller and Carey ceased all use of force. Carey then took Plaintiff to his patrol car,

[2] "A hammerlock is a routine arm hold accomplished by twisting a person's arm behind his back and pulling the arm up towards the shoulder." *Robinson v. Lambert*, 753 F. App'x 777, 779 n.1 (11th Cir. 2018).

and Miller turned his attention to the passenger who had remained in the truck as ordered.

A little later, Plaintiff was removed from Carey's patrol car so deputies could get his wallet containing his identification out of his back pants pocket. Plaintiff verbally and physically resisted the deputies' efforts to put him back into the car, and Carey and another deputy ultimately had to forcibly put him into the car—with Carey pushing Plaintiff's upper body and the other deputy pulling his lower body.

Plaintiff was then transported to the jail where he was booked on charges of driving under the influence (DUI) and resisting an officer without violence. He later pled no contest to reckless driving and resisting an officer without violence, and he was sentenced to 12 months of probation.

Plaintiff claims that his right elbow was dislocated when he was being handcuffed.[3] He testified that he felt "[a] sharp pain" when Miller twisted his right arm and immediately "knew something was wrong."

Plaintiff did not mention being injured or in pain when he was at Carey's patrol car, when he was transported to the jail, or during the intake process at the jail.[4] Plaintiff claims that he did not say anything at that time because he did not

---

[3] Plaintiff does not attribute his injury to the later use of force by Carey and the other deputy to get him back into the patrol car.

[4] The video from the jail intake office shows Plaintiff sitting calmly for about 25 minutes, not saying or doing anything that would suggest that he was in any pain at that time.

think anyone would help him.

A little more than an hour after Plaintiff was booked into the jail, one of the corrections officers observed that his right elbow and arm were swollen. Plaintiff was transported to the hospital where hospital staff attempted to pop his elbow back into place.

Plaintiff became eligible for bail after being in custody for eight hours, and as soon as that happened, he elected to leave the hospital against medical advice and return to the jail so he could be released. Plaintiff went back to the hospital shortly after he was released from jail, but he left again against medical advice without treatment.

About a week later, on March 7, 2022, Plaintiff went back to the hospital and underwent a surgery on his right elbow to put it back into place. He underwent two additional surgeries (on March 28 and April 13) to repair ligament damage after he re-dislocated it in a "shaking incident" caused by his seizure condition.

After the surgeries, Plaintiff participated in physical therapy to rehabilitate his elbow. When Plaintiff was discharged from physical therapy on September 7, 2022, he was "able to complete most tasks with minimal difficulty" and he had an "excellent" prognosis. However, at his deposition in June 2024, Plaintiff testified that he still experienced "sharp pain" and an "arthritisy (sic) type of pain" in his elbow and that he could no longer golf, play basketball with his son, do house

projects, or mow lawns.

## Procedural History

In July 2023, Plaintiff filed suit against Santa Rosa County Sheriff Bob Johnson and Deputies Miller and Carey, asserting claims under 42 U.S.C. §1983 and state law. The claims against the Sheriff were dismissed, *see* Doc. 9, leaving only a §1983 excessive use of force claim (Count I) and a state law battery claim (Count II) against Miller and Carey.

The parties engaged in an extended period of discovery, after which Miller and Carey filed a motion for summary judgment on both claims asserted against them. The motion is fully briefed and is ripe for ruling. No hearing is needed to rule on the motion.

## Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "material" if it would change the outcome of the litigation, and a dispute about a material fact is "genuine" if the evidence as a whole could lead a reasonable factfinder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986). Once the moving party meets that burden, the non-movant must go beyond the pleadings and identify evidence of record showing a genuine factual dispute for trial. *Id.* at 324.

When reviewing a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001). However, where objective evidence such as a video blatantly contradicts a witness's testimony, the Court can view the evidence as it is reflected in the video. *Scott*, 550 U.S. at 380; *Johnson*, 107 F.4th at 1300-01; *Brooks v. Miller*, 78 F.4th 1267, 1279 (11th Cir. 2023); *Baker*, 67 F.4th at 1277-78.

The Court's role at the summary judgment stage is not to weigh the evidence, but rather to "conclude whether [the evidence] is so one-sided that the result of any trial is inevitable." *Turner v. Phillips*, 2022 WL 458238, at *4 (11th Cir. Feb. 15, 2022). Thus, when ruling on a motion for summary judgment, "the judge must ask himself … whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

**Analysis**

Miller and Carey (collectively, "Defendants") argue that their use of force on Plaintiff was *de minimis* and reasonable, and that they are entitled to qualified immunity on the §1983 claim in Count I and official immunity on the battery claim

in Count II. Plaintiff responds that Defendants are not entitled to qualified immunity or official immunity because their use of force was gratuitous and excessive under the circumstances. Each count will be addressed in turn.

<u>Count I – Excessive Use of Force Under §1983</u>

"Qualified immunity protects police officers from suit in their individual capacities for discretionary actions performed in the course of their duties." *Carter v. Butts Cnty., Ga.*, 821 F.3d 1310, 1318 (11th Cir. 2016). Where (as here) it undisputed that the officers were acting pursuant to their discretionary authority, Plaintiff has the burden to overcome Defendants' qualified immunity by showing that (1) Defendants violated Plaintiff's constitutional right, and (2) the right was "clearly established" at the time the violation occurred. *See Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019).

Defendants contend that Plaintiff has not met his burden with respect to either element. The Court agrees.

*Constitutional Violation*

Defendants argue that they did not violate Plaintiff's constitutional rights because the force they used was *de minimis* and objectively reasonable and necessary because Plaintiff was resisting arrest. Plaintiff responds that the force used was excessive because he was only "slightly" resisting. The Court agrees with Defendants.

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2022) (citing *Graham v. Connor*, 490 US. 386, 394-95 (1989)).

While "some degree of physical coercion or threat" is necessary to effectuate an arrest, the force used must be reasonable. *Id.* "[T]he question of whether the force used by the officer in the course of an arrest is excessive is a 'pure question of law,' decided by the court." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1321 (11th Cir. 2017) (quoting *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013)).

Making this determination requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Brown v. City of Huntsville*, 608 F.3d 724, 737-38 (11th Cir. 2010) (cleaned up). Factors to be considered in that balancing include: (1) the severity of the crime; (2) if the arrestee poses an immediate threat to the safety of the officers or others; (3) if the arrestee is actively resisting or attempting to evade arrest; (4) the need for the application of force; (5) the relationship between the need for force and the amount of force used; and (6) the injury inflicted by the arresting officer. *See Helm v. Rainbow City*, 989 F.3d 1265, 1273 (11th Cir. 2021).

Here, the first factor (severity of the crime) weighs in Plaintiff's favor because he was stopped for a non-violent offense (DUI) and Miller had no prior interactions with him and no reason to believe that he may be armed or dangerous. *See Davidson v. City of Opelika*, 675 F. App'x 955, 958 (11th Cir. 2017); *Schultz v. Hall*, 365 F. Supp. 2d 1218, 1227 (N.D. Fla. 2005).

The second factor (threat to officer safety) weighs in Defendants' favor because even though there was no indication that Plaintiff was armed when he got out of the truck and he initially complied with Miller's commands,[5] he also cursed at Miller and resisted Defendants' efforts to handcuff him to the point that Carey had to help Miller get Plaintiff handcuffed. *See Manners v. Cannella*, 891 F.3d 959, 974 (11th Cir. 2018) (finding the immediate threat factor weighed against the plaintiff when he resisted arrest and a second officer had to assist in handcuffing the plaintiff); *Horn v. Barron*, 720 F. App'x 557, 565 (11th Cir. 2018) (finding that a reasonable officer could think a plaintiff who was "admittedly 'pissed off' and shouting obscenities" posed a safety threat to the officer and others, even when the plaintiff's

---

[5] The Court did not overlook that Plaintiff brought his hands back into the truck after Miller told him to open the door from the outside, but Miller's body camera video shows that Plaintiff's hands were only out of view for a second or two as part of a single continuous movement to open the door from the inside. Moreover, even if Miller had reason to believe that Plaintiff might be arming himself when his hands were out of view, he could clearly see that Plaintiff's hands were empty as soon as the door opened. *Cf. Davis v. Lowers*, 132 F. App'x 302, 305 (11th Cir. 2005) (finding the plaintiff posed an immediate safety threat when he reached around his feet as an officer approached his vehicle because the plaintiff's movements could reasonably be interpreted as him "possibly reaching for or concealing a weapon").

charged crime was not considered severe). Moreover, when Plaintiff first resisted by not giving Miller his left hand as ordered, Miller was alone on the scene, and he was not able to see what the passenger was doing or whether he was about to be a threat.[6] *See Hardigree v. Lofton*, 992 F.3d 1216, 1232 (11th Cir. 2021) (noting that courts also consider "the number of persons with whom the police officers must contend at one time" in evaluating the reasonableness of the officer's use of force) (quoting *Jackson v. Sauls*, 206 F.3d 1156, 1170 n.18 (11th Cir. 2000)).

The third factor (active resistance) weighs in Defendants' favor because, although Plaintiff argues that he was only "slightly" resisting, the video recording of the incident shows that the resistance included not immediately giving Miller his left hand; attempting to pull away and turn towards Miller as Miller tried to secure his right hand; and holding his hands together as Miller (with Carey's assistance) attempted to handcuff his right hand. Courts have characterized similar behavior as actively resisting arrest for the purpose of evaluating the reasonableness of the use of force. *See, e.g., Turner v. Ochoa*, 2024 WL 4346516, at *2, *4 (11th Cir. Sept.

[6] The fact that the passenger turned out not to be a threat to officer safety because he remained in the truck as ordered is immaterial because it is well-established that the officer's conduct "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" since "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *See Graham*, 490 U.S. at 396–97. For the same reason, the Court is not persuaded by Plaintiff's argument that Miller's actions were unreasonable because he had a hostile and aggressive tone towards Plaintiff from the outset of the stop and failed to take appropriate steps to de-escalate the situation before resorting to the use of force.

30, 2024) (finding the plaintiff was actively resisting arrest when she pulled away from the officer while he handcuffed her and "would not give him her remaining arm once he handcuffed the other"); *Anderson v. City of Tampa*, 555 F. Supp. 2d 1268, 1273 (M.D. Fla. 2008) (finding the plaintiff was actively resisting arrest by not complying with the officer's directive to put his hands behind his back and was moving his arms around while the officer attempted to handcuff him); *Schultz*, 365 F. Supp. 2d at 1227 (finding the plaintiff was actively resisting arrest by repeatedly pulling her hands away from the officer when he attempted to handcuff her while she yelled loudly).

The fourth factor (need for the force) weighs in Defendants' favor. Miller did not use any force until Plaintiff refused to follow multiple orders to give Miller his left hand, and he did not apply the hammerlock until Plaintiff attempted to pull his right hand away and turn towards Miller. *See Barfield v. Rambosk*, 641 F. App'x 845, 848 (11th Cir. 2015) (finding that an intoxicated plaintiff's "noncompliance [and] continued physical resistance to arrest justifie[d] the use of force" to control and handcuff the plaintiff).

The fifth factor (proportionality of the force) weighs in Defendants' favor because the video recording of the incident shows that the force used was not disproportionate to the amount of resistance that Plaintiff was offering—particularly since the force was only applied to the area of Plaintiff's body that was offering the

resistance (his upper body, arms, and hands) and all force ceased when Plaintiff was fully handcuffed and no longer resisting. *See Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (finding that grabbing and twisting a plaintiff's arm around the plaintiff's back, and jerking it up high to the shoulder in order for the plaintiff to be handcuffed is a "relatively common and ordinarily accepted non-excessive way to detain an arrestee"); *Schultz*, 365 F. Supp. 2d at 1228 (finding that officers pulling and yanking on the plaintiff's arms behind her back while she moved her arms around and twisted away was "not excessive or disproportionate").

The sixth factor (extent of the injury) is neutral. Although Plaintiff suffered a dislocated elbow with ligament damage that required multiple surgeries to repair as a result of Defendants' use of force,[7] that does not necessarily mean that the force used was excessive. Indeed, courts in the Eleventh Circuit have rejected excessive use of force claims in cases involving similar (and more serious) injuries. *See, e.g., Horn*, 720 F. App'x at 560, 565 (granting qualified immunity to officers who broke the plaintiff's arm while trying to handcuff her as she pulled her arms away, and the plaintiff required surgery); *see also, e.g., Barnett v. City of Florence*, 2009 WL 10694764, at *4, *9 (N.D. Ala. Oct. 30, 2009) (granting qualified immunity when

[7] The Court must assume at this stage of the case that the full extent of Plaintiff's elbow injury is attributable to Defendants' use of force, but it is noteworthy that Plaintiff left the hospital against medical advice on two occasions in the hours after his injury occurred and his medical records suggest that he re-dislocated the elbow after the first surgery in a "shaking episode" caused by a seizure condition unrelated to the use of force incident.

the arrestee dislocated his elbow and had to undergo four surgeries); *Turner v. Ochoa*, 2024 WL 420126, at *3 (M.D. Ga. Feb. 5, 2024) (granting qualified immunity when the officer broke the arrestee's arm while trying to handcuff her and she required surgery); *Wright v. Miller*, 2008 WL 11474810, at *2, *5 (M.D. Ga. Mar. 28, 2008) (granting qualified immunity and finding "a broken elbow that required multiple surgeries" to be the "unfortunate consequence" of the plaintiff's physical resistance to being handcuffed); *Sanchez v. Obando-Echeverry*, 716 F. Supp. 2d 1195, 1200, 1205 (S.D. Fla. 2010) (granting qualified immunity when officers threw the plaintiff to the ground and twisted his arm in an attempt to handcuff him, and the plaintiff suffered an "unfortunate" torn labrum in his shoulder that required surgery).

On balance of these factors, the Court finds without hesitation that Defendants' use of force was reasonable and necessary under the circumstances as a matter of law. The fact that Plaintiff's shoulder was dislocated in the incident is simply an unfortunate consequence of his resistance to Defendants' efforts to secure him in handcuffs. Accordingly, Plaintiff has not met his burden to show that Defendants violated his constitutional rights.

*Clearly Established*

Based on the determination that Defendants did not violate Plaintiff's constitutional rights, the Court need not consider whether the right they allegedly

violated was "clearly established" at the time. However, for sake of completeness, the Court will address Plaintiff's arguments on that issue.

"To determine whether a right was clearly established at the time an officer acted, [the Court] ask[s] 'whether the contours of the right were sufficiently clear that every reasonable officer would have understood that what he was doing violates that right.'" *Acosta v. Miami-Dade Cnty.*, 97 F.4th 1233, 1241 (11th Cir. 2024) (quoting *Prosper v. Martin*, 989 F.3d 1242, 1251 (11th Cir. 2021)). "A plaintiff may show that a right was 'clearly established' through: '(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.'" *Prosper*, 989 F.3d at 1251 (quoting *Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016)).

Here, Plaintiff relies on four cases to argue that Defendants' actions violated his clearly established constitutional rights, but those cases are distinguishable because they involved individuals who (unlike Plaintiff) were obedient,[8] compliant,[9]

[8] *Sebastian v. Ortiz*, 918 F.3d 1301, 1305, 1311 (11th Cir. 2019) (finding no qualified immunity when the officer "became enraged" and physically removed the "obedient" plaintiff from his vehicle before handcuffing him so tightly that he suffered permanent nerve damage in his hands).

[9] *Stephens*, 852 F.3d at 1328 (finding no qualified immunity when the officer forcefully hit the "compliant" plaintiff multiple times in the chest and caused his head to strike the door, resulting in permanent injury).

fully secured,[10] and not offering any resistance at all.[11] Thus, those cases did not clearly establish that the force used on Plaintiff was unconstitutional.

* * *

In sum, for the reasons stated above, the Court finds that Defendants are entitled to summary judgment on the §1983 excessive use of force claim in Count I of the complaint.

<u>Count II – State Law Battery</u>

Defendants argue they are entitled to summary judgment on the state law battery claim because (1) the force they used was reasonably necessary to effectuate a lawful arrest, and (2) they have official immunity under §768.28(9)(a), Fla. Stat., because there is no evidence that their actions were done in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights or safety. Plaintiff responds that (1) the force used was "gratuitous, excessive, wholly unnecessary, and unjustified" based on Plaintiff's "slight" resistance, and (2) Defendants are not entitled to official immunity because a jury could find the "excessive" amount of force used amounted to a wanton and willful disregard of

---

[10] *Lee*, 284 F.3d at 1199-1200 (finding no qualified immunity when the officer took a fully secured, handcuffed plaintiff to the back of her car and slammed her head against the trunk).

[11] *Smith v. Mattox*, 127 F.3d 1416, 1420 (11th Cir. 1997) ("[A]ssuming as we must that [the plaintiff] was offering no resistance *at all*, the considerable effort and force inferable from the grunt, [the plaintiff's] sensation of a blow, and the broken arm was obviously unnecessary to restrain even a previously fractious arrestee.") (emphasis in original).

Plaintiff's rights. The Court agrees with the first argument, so it need not address the second argument.

Under Florida law, "battery has two elements: (1) intent to cause a harmful or offensive contact, and (2) a resulting offensive contact with the person of another." *Baxter v. Roberts*, 54 F.4th 1241, 1272 (11th Cir. 2022) (cleaned up). In the context of an arrest, "[a] battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." *Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996).

"If excessive force is used in an arrest, the ordinarily protected use of force by a police officer is transformed into a battery." *Id.* However, "ordinary incidents of [an] arrest ... do not give rise to an independent tort." *Lester v. City of Tavares*, 603 So. 2d 18, 19–20 (Fla. 5th DCA 1992).

These standards are effectively the same as those that govern excessive use of force claims under §1983. *See Kirby v. Sheriff of City of Jacksonville, Fla.*, 2023 WL 2624376, at *7 (11th Cir. Mar. 24, 2023); *Greer v. Ivey*, 2022 WL 2914471, at *7 (11th Cir. July 25, 2022); *Sullivan v. City of Pembroke Pines*, 161 F. App'x 906, 911 (11th Cir. 2006); *Grund v. Aden*, 2022 WL 19369239, at *4 (N.D. Fla. Dec. 19, 2022). Thus, for the same reasons that Plaintiff failed to prove that the force used by Defendants to effectuate his arrest was constitutionally excessive, he failed to prove that the force was excessive or unreasonable under state law.

Accordingly, Defendants are entitled to summary judgment on the state law battery claim in Count II of the complaint.

**Conclusion**

In sum, for the reasons stated above, it is **ORDERED** that:

1. Defendants' motion for summary judgment (Doc. 23) is **GRANTED**.

2. The Clerk shall enter judgment in accordance with this Order and close the case file.

**DONE and ORDERED** this 13th day of November, 2024.

**T. KENT WETHERELL, II**
**UNITED STATES DISTRICT JUDGE**